IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN MARIE BALL, | : | CIVIL NO. 1:CV-09-0847 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| C.O. ODEN, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Dawn Marie Ball ("Ball") is an inmate confined at the State Correctional Institution at Muncy (SCI-Muncy), Pennsylvania. She filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 5, 2009. Named as Defendants are Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections ("DOC"), and thirty-three (33) SCI-Muncy employees.[1] In the complaint, Ball sets forth numerous instances where Defendants allegedly interfered with, confiscated and/or destroyed her mail and property. The allegations span the time period from April of 2007, through the filing of the complaint. Before the Court for consideration is Defendants' motion to dismiss the complaint (Doc. No. 17). For the reasons that follow, the motion will be granted.

I. **Background**

In the complaint Ball alleges that in April of 2007, Defendants Oden and Reid packed up the property in her cell. On May 26, 2007, Ball claims she discovered that some of her property

---

[1] The SCI-Muncy Defendants are as follows: Marirosa Lamas, Superintendent; Deputy Superintendent Smith; Superintendent's Assistant Troy Edwards; Mailroom Supervisor Peterson; Business Manager Koleno; Librarian Kopshina; and Correctional Officers Eiswerth, Eckroth, Oden, Reid, Curham, Pinard, Rager, Wolford, Gair, Hummel, Keen, Foulds, Griner, Campbell, Robernolt, Gridley, Winder, Blessing, Sisley, Smith, Craver, Miller, Redding, Aikey, Nolte, Baker and Barto.

was missing after receiving the property sheet. The missing property included hand and finger braces, paper folders, mail, brushes, pens, mirrors, combs and toothbrushes. (Doc. No. 1, Compl. at 2.)[2] Ball further alleges that Defendant Pinard destroyed personal hygiene items, a pair of glasses, shower shoes and unopened mail from 9/17/07 through 9/19/07. (Id.) Defendant Ragar is alleged to have deprived her of mail during the same time period, while Defendant Redding withheld her mail from August of 2007 through October of 2007.

Ball claims that Defendant Campbell, who is responsible for distributing the incoming mail, failed to "secure the mail" from January 23, 2008 through February 19, 2008. On March 11, 2008, Defendant Keen took a manilla envelope that Ball needed to mail. She claims the envelope was never mailed, and she never received a cash slip or the return of the envelope. (Id.) On April 7, 2008, and during August of 2008, Defendant Smith told Ball he would return her property, but never did.

Defendant Fould interfered with Ball's mail on August 3, 2008. The complaint also sets forth allegations of mail interference on January 23, 2008, February 19, 2008, September 17-19, 2008, and October 23, 2008 by Defendants Griner and Campbell. Defendants Robernolt and Sisley are alleged to have confiscated and destroyed Ball's mail in March of 2008, as well as June through August of 2008. Defendant Gridley engaged in the same activity from January of 2009 through March of 2009. (Id. at 2.) On an unspecified date, Ball claims Defendant Curham confiscated and destroyed her legal documents.

In September of 2008, Ball claims Defendant Edwards failed to process sixteen (16) copies of grievances that she had given him, and failed to return them to her. He also failed to

---

[2] In referencing documents contained in the record, the Court will refer to the page numbers assigned by the Court's Electronic Document Filing System (ECF).

give Ball a letter her attorney faxed to her in December of 2008, as well as puzzles her mother sent to her in January of 2009.

Ball contends that Defendants Wolford and Gair violated her rights on October 26, 2008, when they conducted a cell search in her absence. She claims they confiscated magazines, drawings and papers. Defendants Hummel and Craver also went through Ball's property and confiscated/destroyed personal items, as well as "legal stuff." (Id.)

Defendants Eiswerth, Blessing, Smith and Miller are claimed to have gone through and thrown out personal property belonging to Ball in June of 2008, August 7, 2008 and October 18, 2008. Blessing also withheld fifty-six (56) pieces of Ball's mail for over one (1) month on January 13, 2009. On an unspecified date, Defendant Winder threw out articles of Ball's old clothing after she had gotten new clothing.[3]

Beginning on February 9, 2009, and continuing into March of 2009, Ball claims Defendants Peterson and Koleno took eighty-three (83) pieces of her incoming and outgoing mail. Peterson is also alleged to have taken outgoing mail on March 11, 2008, August 3, 2008 and various dates in April of 2009. Ball states that Defendants have scared her roommate because they saw Ball's address appearing on her roommate's mail. (Id. at 4.)

Ball also sets forth claims against Defendant Kopshina, the librarian at SCI-Muncy. According to Ball, Kopshina failed to copy items that Ball sent on February 16, 2009, and March 1 and 20, 2009. She also denied Ball's request for legal forms on an unspecified date, and in February of 2009, failed to copy and/or return five (5) motions Ball intended to file in Civil Action No. 08-700, a case presently pending in this Court. Because of Kopshina's actions Ball

---

[3] Ball specifically refers to five (5) pairs each of panties and socks, five (5) bras and five (5) t-shirts.

states she was unable to file the motions.

In April of 2009, Ball claims Defendant Gridley stole personal property from one (1) of the five (5) bags previously taken. Defendants Aikey and Eckroth refused to give Ball copies of the property sheets from her boxes. On April 23 and 24, 2009, Defendant Winder refused to give Ball unspecified "supplies." (Id. at 6.) Defendant Baker is alleged to have refused to give Ball her mail on April 24, 2009, and Defendant Barto refused to do anything about Baker's actions. On April 26, 2009, Defendant Peterson held two (2) pieces of Ball's outgoing mail for two (2) days before returning them to her. Ball claims that this violates policy which requires that any unprocessed mail must be returned to her within twenty-four (24) hours. She also complains about three (3) pieces of outgoing personal mail never sent out to her mother and her friend.

Ball challenges Defendant Wright's action in informing her on May 1, 2009, that she is only permitted to put out labeled envelopes. This restriction is pursuant to the orders of Defendants Koleno and Lamas because Ball "circumvented" the mail rules. Marirosa Lamas, Superintendent at SCI-Muncy, is named as a Defendant because Lamas "allows the other Defendants to get away with these violations." (Id. at 8.) Defendant Beard is liable because, as the Secretary of the DOC, he is the policymaker. As relief for all of the foregoing violations, Ball seeks an order directing Defendants to return/replace all missing and destroyed property as well as monetary damages.

**II.     Discussion**

### A. Motion to Dismiss Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Under Fed. R. Civ. P. 12(b)(6), the court must accept as true the factual allegations in the complaint, and construe any inferences to be drawn from the allegations in Plaintiff's favor. See Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). "The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Marangos v. Swett, No. 08-4146, 2009 WL 1803264 (3d Cir. June 25, 2009)(citing Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949-50 (2009). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain enough "facts to state a claim to relief that is plausible on its face" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and the factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (internal citations omitted); accord Iqbal, 129 S. Ct. at 1953. The facts plead must offer more "than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., 120 S. Ct. at 1949 (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct at 1949 (citing Twombly, 550 U.S. at 556). Further, a district court should provide leave to amend "when amendment could cure the deficiency and would not be inequitable." Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002). A complaint that does not establish entitlement to relief under any reasonable interpretation is properly dismissed without leave to

amend. Id. at 106.

**B. Analysis**

Defendants have filed a motion seeking to dismiss the claims set forth by Ball in the pending complaint. They first argue, however, that Ball should be compelled to file an amended complaint due to her violation of Federal Rule of Civil Procedure 10(b) which requires a party to state claims in numbered paragraphs. In reviewing Ball's complaint, there is no question that she fails to adhere to Fed. R. Civ. P. 10(b). The complaint, as submitted, is almost nine (9) pages of allegations against 34 defendants. She does not present her claims in numbered paragraphs, or even paragraphs for that matter. The Court agrees with Defendants that reading the complaint is no easy task. However, in light of Ball's pro se status, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), and the fact that Defendants have successfully read through the complaint and filed the pending motion seeking to dismiss the claims, an amended complaint will not be directed on the basis of a Rule 10(b) violation. As such, the Court will now address Defendants' remaining arguments in support of their motion to dismiss.

**1. Claims for monetary damages against Defendants in their official capacities**

Defendants seek the dismissal of all claims for money damages set forth against them in their official capacities. Unless consented to by the state, the Eleventh Amendment prevents suits from being brought in federal court against a state or one of its agencies or departments for money damages. Pennhurst v. Halderman, 465 U.S. 89, 99-100 (1984). A suit brought against an individual acting in his or her official capacity is similarly deemed to be a suit against the state, and as such, barred by the Eleventh Amendment. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) Accordingly, all claims for money damages set forth against Defendants in

their officials capacities will be dismissed.

## 2. Claims against Beard and Lamas

Defendants seek the dismissal of Defendants Beard and Lamas due to Ball's failure to demonstrate sufficient personal involvement on their parts to state a claim under 42 U.S.C. § 1983. They contend that Beard, Secretary of the DOC, and Lamas, Superintendent at SCI-Muncy, are only named as Defendants due to the supervisory positions they hold within the DOC and the institution. It is well-established that civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Liability cannot be based solely on the basis of a defendant's supervisory capacity, that is, there must be allegations that the official had knowledge or acquiesced in any purported acts of constitutional mistreatment. In the instant case, it is evident that both Beard and Lamas are named solely based upon their positions as DOC Secretary and Superintendent at SCI-Muncy.

Ball states she is suing Beard because as the Secretary of the DOC, he is "the policymaker for the prisons." (Doc. No. 1 at 4.) She seeks to impose liability against Ball in her capacity as head of SCI-Muncy claiming that she "allows the prison officials to get away with" what they do. (Id.) While Ball references Lamas with respect to her claim against Defendant Wright and the labeling of her outgoing mail, it is only in Lamas' overall supervisory capacity at the prison. These allegations are insufficient to show the required personal involvement for stating a claim under § 1983. There are no allegations that Beard and Lamas participated in any

7

of the alleged violations.

### 3. Confiscation and Destruction of Property

As an inmate housed in the Restricted Housing Unit ("RHU"), Ball is subject to certain restrictions as per Pennsylvania Department of Correction policy. For example, there are certain restrictions on the property that she is able to retain in her cell. Restrictions on the quantity and type of property inmates retain in their cells have been upheld on the basis of legitimate security concerns within the institution. See Bell v. Wolfish, 441 U.S. 520, 554 (1979). Pursuant to DC-ADM 801, inmates in disciplinary custody are not permitted radio, televisions, telephone calls, personal property or commissary (except toilet articles, written materials and prescribed medications. DC-ADM 801, Section 6 A 3. The personal property maintained must also fit into one standard sized records center box. Id. at Section 6 A 5. An inmate in RHU is provided an RHU jumpsuit and footwear, as well as basic toilet articles upon request. Three pairs of personal undergarments are permitted. "No other personal property is permitted." Id., Section 6 A 8.

Ball alleges numerous claims of property confiscation and destruction in her complaint by many different Defendants over the span of two (2) years. In doing so, she appears to be alleging the deprivation of her property without due process pursuant to the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. In the context of confiscating an inmate's property, however, the Supreme Court of the United States

has held that meaningful post-deprivation remedies for the loss provide sufficient due process for negligent deprivations of property, Parratt v. Taylor, 451 U.S. 527, 530 (1981), and intentional deprivations of property, Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Barr v. Knauer, 321 Fed. Appx. 101, 103 (3d Cir. 2009); Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001). Requiring a pre-deprivation hearing is not required as it would be impossible to determine when a negligent or intentional deprivation of property would occur. Zinermon v. Burch, 494 U.S. 113, 117 (1990).

The Third Circuit Court of Appeals has held that the DOC's grievance procedure pursuant to DC-ADM 804 provides an adequate post-deprivation remedy, see McEachin v. Beard, 319 F. Supp. 2d 510, 514-15 (E.D. Pa. 2004) citing Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000), and that the existence of this post-deprivation remedy forecloses any due process claim. Additionally, Ball can also pursue a tort suit in state court for the alleged deprivation of her property. See 42 Pa. C.S. §§ 8501, 8522(b)(3); see also Austin v. Lehman, 893 F. Supp. 448, 453-54 (E.D. Pa. 1995); Gilmore v. Jeffes, 675 F. Supp. 219, 221 (M.D. Pa. 1987). The availability of Ball to pursue either post-deprivation remedy of the DOC grievance procedure and/or a state tort action for conversion of property, renders her unable to state a procedural due process claim.

In the instant case, Ball has not shown that her post-deprivation procedures are not meaningful. As previously set forth, Ball's allegations span a two year time period and set forth different violations by different Defendants occurring continuously throughout that time period. At no point does Ball contend that the DOC's Inmate Grievance System pursuant to DC-ADM 804 was not adequate to vindicate her rights with respect to each of her numerous claims. While

during the midst of her litany of claims she does allege that Defendant Edwards failed to process or return grievances she provided to him in September of 2008, this does not make Ball's post-deprivation remedies inadequate. (Doc. No. 1, Comp. at 3.) First, she alleges only one isolated incident which would pertain only to claims of property deprivation in September of 2008. More importantly, even if her allegations are true, Ball still had state post-deprivation remedies available.[4]

Further, any claim by Ball that Defendants violated her constitutional rights when they failed to provide her with property or confiscation receipts in accordance with DOC policy does not state a claim for relief. The failure to prison officials to comply with prison directives or regulations does not entitle Ball to relief under § 1983. See Flanagan v. Shively, 783 F. Supp. 922, 931 (M.D. Pa. 1992).

### 4. Cell Searches

Ball complains about Defendants searching through her cell and property on different occasions. The Supreme Court of the United States has held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson, 468 U.S. at 526. As such, Ball's claim that the searches of her cell and property violated her constitutional rights fail to state a claim for relief. The seizure of Ball's legal mail therefore cannot constitute a Fourth

---

[4] In opposing Defendants' motion to dismiss Ball devotes pages to rearguing her position that Defendants improperly searched her cell and property, and confiscated and destroyed numerous personal items. She also argues that post-deprivation remedies were inadequate because at times Defendant Edwards thwarted her efforts to grieve these issues through the DOC grievance procedure. Even accepting these allegations as true, Ball still had state post-deprivation remedies available to her.

10

Amendment violation . See Tindell v. Beard, No. 09-3063, 2009 WL 3739448 at *2 (3d Cir. Nov. 10, 2009).

### 5. Mail Searches and Interference

The bulk of Ball's complaint concerns numerous instances by Defendants of delaying and/or destroying her incoming mail, as well as failing to process and destroying some of her outgoing mail.[5] Much of the mail involved appears to have been personal, however Ball sets forth several allegations involving the interference with and/or destruction of legal mail. As previously discussed, the confiscation/search of Ball's property, including legal mail, does not state a Fourth Amendment or a due process violation. In carefully reviewing the complaint, Ball's allegations sound strictly in terms of confiscation, processing and destruction of mail, not claims that legal mail was ever opened/searched improperly outside of her presence.[6] The Court will, however, examine Ball's claims of interference with legal mail in the context of a First Amendment denial of access to the courts claim.

---

[5] To the extent Ball claims her rights were violated when Defendants required her to use labeled envelopes for outgoing mail, she fails to state a claim. Ball admits that this restriction was imposed only after Defendants discovered she was circumventing mail regulations. As such, Defendants' mail labeling is clearly related to a legitimate penological interest.

[6] Such a claim would present a different issue. In Fontroy v. Beard, 559 F.3d 173 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit upheld as constitutional under the First Amendment the Pennsylvania DOC's prison mail policy of requiring control numbers on legal and court mail sent to inmates, opening mail without control numbers outside of inmates' presence and inspecting for contraband before delivering mail to the inmates.
   In response to Defendants' motion to dismiss, Ball now makes a general claim in her opposition brief that legal mail was opened/searched outside of her presence. However, she does not allege who engaged in such conduct, if even a Defendant named in this action, when the alleged violation(s) occurred or any details surrounding the legal mail that was allegedly opened. (Doc. No. 23 at 14.) To the extent she believes she can state such a claim, she can file an amended complaint in this action within twenty (20) days strictly limited to raising an interference with legal mail claim relating to the facts as alleged in the complaint and the Defendants named therein.

### 6. Access to the Courts

Ball's allegations can also be construed to raise access to the courts claims in violation of the First Amendment. These claims first consist of her allegations that (1) Defendant Edwards failed to give her a letter from her attorney in December of 2008 (Doc. No. 1, Compl. at 3); and (2) in February of 2009 Defendant Kopshina denied her legal forms and failed to copy and return three (3) criminal complaints, as well as several motions Ball had prepared for filing in Civil Action No. 08-700 pending before this Court. (Id. at 4.) She claims that Kopshina engaged in these actions "to make [Ball] miss deadlines" and obstruct her from the courts and to cause a problem with Civil Action No. 08-700. (Id.)

Additional access to the courts claims are raised when Ball alleges on specific occasions her legal property and legal mail were confiscated and/or destroyed. After a careful reading of the complaint, these instances appear to be as follows: (1) Defendant Pinard's destruction of unidentified legal papers in April of 2007 (Id. at 2); (2) Defendant Curham's confiscation and destruction of "legal documents and legal books, copies" in early 2008 (Id. at 4); and (3) the confiscation and destruction of legal papers and "legal stuff" by Defendants Wolford, Gair, Hummel and Craver on October 26, 2008. (Id. at 2.)

Under the First and Fourteenth Amendments, prisoners retain the right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996). However, a prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. Lewis, 518 U.S. at 349. To meet this requirement, a plaintiff must show that the actions of the prison officials hindered the prisoner's efforts to pursue a nonfrivolous claim. See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008); Christopher v. Harbury, 536 U.S. 403, 415

(2002). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." Lewis, 518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." Id. at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 349.

Defendants move to dismiss Plaintiff's denial of access to the courts claims. They argue that at no point in the complaint does Ball describe in any manner the nonfrivolous nature of her purported pending legal actions or establish any actual injury suffered as a result of Defendants' alleged actions. Defendants specifically reference Ball's claims regarding Kopshina's failure to copy five (5) motions Ball claims she wanted to file in Civil Action No. 08-700, and her belief that Kopshina wanted "to cause a problem" in that action. However, Plaintiff never alleges that a problem did arise because of Kopshina's failure to copy the motions for Ball. In fact, a review of the docket in Civil Action No. 08-700 reveals that the case is still proceeding before this Court, and that Ball has been actively litigating the case all along. Thus, she clearly fails to establish actual injury with respect to this claim. To the extent Ball claims Kopshina's other actions somehow obstructed her from the courts she clearly fails to state a claim as she sets forth no allegations with respect to the basis of any underlying legal action she intended to pursue and why she is now prevented from doing so.

For the same reasons Ball's complaint fails to state a claim under Lewis and Christopher

13

with respect to her remaining access to the courts claims. She generally alleges that Defendants confiscated and/or destroyed "legal papers" and "legal stuff" without providing any information as to what cases she sought to bring that were frustrated, and any basis from which to infer that any such cases were non-frivolous. Further, there are no allegations as to what "actual injury" she suffered.

In her brief in opposition to Defendants' motion Ball basically reiterates the same arguments set forth in her complaint that have been addressed above. She does, however, now claim that she suffered "actual injury" due to the inadequacies of the law library itself. She claims that there are no books and that the books that do exist are ripped. She specifically claims that her complaint in "08-392" was dismissed. The Court believes Ball is actually referring to a civil action she had pending in this Court at one time that is now closed.[7] However, this is merely an attempt by Ball to raise a new issue by way of her opposition brief, which is not permitted. To the extent she challenges the adequacy of the law library and claims to have suffered actual injury because of it, she is free to pursue such claims in a new action.

In her opposition brief Ball also claims that actual injury was suffered because (1) her "PCRA was dismissed" and (2) she lost her opportunity to litigate claims. Again, she does not provide any details with respect to the underlying causes of action demonstrating that they were of a non-frivolous nature, how the opportunity is now lost to pursue these matters and when the alleged actual injury occurred. Moreover, she fails to identify what individual was responsible for these violations. Accordingly, her access to the courts claims fail to state a claim for relief.

For the foregoing reasons, Ball's complaint will be dismissed for failure to state a claim

---

[7] See Ball v. SCI-Muncy, et al., No. 1:08-cv-0391(M.D. Pa.). This action was filed on March 6, 2008 and closed on December 10, 2008.

upon which relief may be granted. Where a complaint is subject to dismissal for failure to state a claim, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008)(citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

Although the Court harbors some doubt as to the viability of Ball's claims, she will be granted leave to file an amended complaint strictly limited to raising a claim with respect to any of the named Defendants regarding the opening of legal mail, and/or the access to the courts claims regarding the PCRA dismissal and the lost litigation opportunities. The amended complaint must be filed within twenty (20) days from the date of this Memorandum and Order. It must be a self-contained document, and should not refer back to the original complaint. In the amended complaint, Ball must address the deficiencies noted with respect to the three (3) claims referenced above. Any new claims she attempts to raise will be stricken. Failure to file an amended complaint within twenty (20) days will result in his complaint being dismissed with prejudice. An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | CIVIL NO. 1:CV-09-0847 |
| **Plaintiff,** | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **C.O. ODEN, et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW, THEREFORE, THIS 10th DAY OF MAY, 2010,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendants' Motion to Dismiss (Doc. No. 17) is **granted.** Plaintiff's complaint is dismissed without prejudice.

2. Plaintiff is granted leave to file an amended complaint in this action within twenty (20) days specifically limited to the issues delineated in the accompanying Memorandum. Failure to do so will result in the complaint being dismissed with prejudice.

        S/ Yvette Kane
        YVETTE KANE, Chief Judge
        Middle District of Pennsylvania