# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN BALL,** | : | **Civil No. 1:09-CV-847** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **C.O. ODEN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.     Statement of Facts and of the Case

#### A.     Dawn Marie Ball's Litigation History

In many ways, Dawn Ball's current circumstances inspire continuing sorrow and concern.  Dawn Ball is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who has candidly acknowledged that she is profoundly disturbed.  Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7.) Furthermore, Ball is also an inmate who has reported to the court that she engages in multiple episodes of destructive, self-defeating and senseless behavior.

Much of this institutional misconduct is marked by disturbing, excretory behavior.  Indeed, a constant refrain throughout many of Ball's lawsuits is her

1

fascination with her own bodily wastes. For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on herself, her clothes, her property, her mail, and her cell, as well as her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste. See e.g., Ball v. Hill, 1:09-CV-773, 2012 WL 4069748 (M.D. Pa. Aug. 9, 2012) report and recommendation adopted, 1:09-CV-00773, 2012 WL 4069737 (M.D. Pa. Sept. 17, 2012); Ball v. Famiglio, 1:11-CV-1834, 2012 WL 1886676 (M.D. Pa. Mar. 14, 2012) report and recommendation adopted, 1:11-CV-1834, 2012 WL 1886673 (M.D. Pa. May 23, 2012); Ball v. Sisley, 1:11-CV-877, 2011 WL 7940267 (M.D. Pa. Dec. 20, 2011) report and recommendation adopted, 1:11-CV-877, 2012 WL 1867276 (M.D. Pa. May 22, 2012).

This institutional misconduct is further marked by Ball's refusal to abide by prison, rules, procedures and policies, a constant refrain throughout many of Ball's lawsuits where Ball has consistently declined to follow rules prescribed for the exhaustion of grievances. Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison. Indeed, Ball has had more than 25 lawsuits pending before this court.[1]

_____

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846,

Furthermore, Ball has been a prodigiously unsuccessful litigant, who has had more than a dozen prior lawsuits dismissed either as frivolous or on the grounds that the lawsuit failed to state a claim upon which relief could be granted.

The history of repeated, frivolous and meritless litigation in federal court by this plaintiff began in March of 2008, when Ball filed a complaint in the case of <u>Ball v. SCI Muncy</u>, No. 1:08-CV-391 (M.D. Pa.). On December 10, 2008, the district court dismissed this civil action, citing Ball's failure to exhaust her administrative remedies, and stating that Ball:

> does not dispute that she failed to exhaust her administrative remedies with regard to the issues raised in the complaint. Plaintiff's failure to oppose the remaining Defendants' motion, which also seeks dismissal for failure to exhaust administrative remedies, renders the motion unopposed. See L.R. 7.6. It is clear that Plaintiff's claims are not properly before this Court and must be dismissed.

---

(M.D. Pa.); <u>Ball v. Oden</u> , No 1:09-CV-847 (M.D.Pa.); <u>Ball v. Bower</u>, No. 1:10-CV-2561 (M.D.Pa.); <u>Ball v. Sisley</u>, No. 1:11-CV-877 (M.D.Pa.); <u>Ball v. Struther</u>, No. 1:11-CV-1265 (M.D.Pa.); <u>Ball v. Hummel</u>, No. 1:11-CV-1422 (M.D.Pa.); <u>Ball v. Beckley</u>, No. 1:11-CV-1829 (M.D.Pa.); <u>Ball v. Sipe</u>, No. 1:11-CV-1830 (M.D.Pa.); <u>Ball v. Craver</u>, No. 1:11-CV-1831 (M.D.Pa.); <u>Ball v. Powley</u>, No. 1:11-CV-1832 (M..D.Pa.); <u>Ball v. Cooper</u>, No. 1:11-CV-1833 (M.D.Pa.); <u>Ball v. Famiglio</u>, No. 1:11-CV-1834 (M.D.Pa.); <u>Ball v. Eckroth</u>, No. 1:11-CV-2238 (M.D.Pa.); <u>Ball v. Campbell</u>, No. 1:11-CV-2239 (M.D.Pa.); <u>Ball v Barr</u>, No. 1:11-CV-2240 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-10 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-11 (M.D.Pa.); <u>Ball v Curham</u>, No. 1:12-CV-12 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-812 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-813 (M.D.Pa.); <u>Ball v. Hummel</u>, No. 1:12-CV-814 (M.D.Pa.); <u>Ball v. D'Addio</u>, No. 1:12-CV-815 (M.D.Pa.).

(Doc. 36, p.5.)

While, fairly construed, the district court's dismissal decision rested on exhaustion grounds, and did not entail an analysis of the merits of Ball's claims, the dismissal order itself went on to state that any appeal of this dismissal would be "deemed frivolous and not in good faith."  Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36, p.6.)

Nonetheless, Ball appealed this ruling.  (Doc. 37.)  On July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action, noting that:

> The District Court granted the Defendants' motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds of failure to exhaust administrative remedies. We agree with the District Court's decision and accordingly affirm the dismissal of Ball's claims.

Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.)(Doc. 44, p. 2-3.)  Thus, the court of appeals' ruling, like the district court's decision, was expressly based upon Ball's failure to exhaust her administrative remedies.

On May 5, 2009, Ball filed a second civil action in the case of Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.).  This action was also dismissed by the district court, which on this occasion considered the merits of Ball's claims and explicitly concluded that Ball had failed to state a claim upon which relief could be granted.

Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36.) Therefore, this second dismissal involved a merits analysis of Ball's claims, and a determination that Ball's complaint "fail[ed] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). Ball appealed this dismissal order, Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc 34.), but her appeal of this case was summarily denied by the court of appeals, Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 48.), and, on October 29, 2010, this case was closed by the appellate court with the issuance of its mandate dismissing this appeal pursuant to 28 U.S.C. § 1915(e)(2)(B).[2] Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48.)

Ball then filed yet another lawsuit in the case of Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1.) On June 15, 2011, upon a screening review of this complaint, the district court dismissed this action for failure to state a claim upon which relief could be granted. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8.) Ball appealed this dismissal. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10.) On September 21, 2011, the

_____

[2]28 U.S.C. § 1915(e)(2)(B)(I) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010, ruling was tantamount to a declaration that this action was also frivolous.

court of appeals entered an opinion and order dismissing Ball's appeal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). That appellate court opinion and order spoke unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). This appeal lacks any such basis. As the District Court adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." <u>Gallas v. Supreme Court of Pa.</u>, 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

<u>Ball v. Butts</u>, No. 11-2862, 2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

In addition to these dismissals, Ball currently has at least ten other cases[3] pending before this court where there have been reports and recommendations issued, or adopted, calling for dismissal of claims. In many instances, these dismissals are grounded both on a merits assessment which found her claims substantively wanting, and are premised on Ball's failure to exhaust her administrative remedies within the prison system. Ball v. Struthers, 1:11-CV-1265, 2012 WL 2946785 (M.D. Pa. July 19, 2012); Ball v. Famiglio, 1:11-CV-1834, 2012 WL 1886676 (M.D. Pa. Mar. 14, 2012) report and recommendation adopted, 1:11-CV-1834, 2012 WL 1886673 (M.D. Pa. May 23, 2012); Ball v. SCI Muncy, 1:08-CV-0391, 2008 WL 5189132 (M.D. Pa. Dec. 10, 2008) aff'd, 385 F. App'x 211 (3d Cir. 2010).

## B. Ball's Current Lawsuit

### 1. Factual Background

It is against the backdrop of this history of unsuccessful, unexhausted and meritless filings that Ball instituted the current lawsuit. The plaintiff commenced this action on May 5, 2009, when Ball filed a multi-faceted civil complaint which alleged,

---

[3]Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.);  Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.).

in part, that on various dates her "mail [and] property along [with] legal papers were taken [and] destroyed." (Doc. 1.)  On July 16, 2009, the defendants filed a motion to dismiss this complaint, (Docs. 17-19.), which was granted by the district court on May 10, 2010, (Doc. 45.).

Ball then appealed this dismissal to the United States Court of Appeals for the Third Circuit.  On April 28, 2011, the court of appeals affirmed in part and vacated in part the district court's order, affirming the dismissal of the bulk of Ball's complaint as meritless, but remanding for consideration of one specific, narrow issue – directing us to determine whether Ball's claims regarding interference with mail stated a claim under the First Amendment.  (Doc. 57.)

Following this remand, on November 10, 2011, the defendants filed a Motion for a More Definite Statement (Doc. 77.) as to the allegations in the complaint, which this court granted on November 16, 2011.  (Doc. 83.)  Ball then filed a ten page amended complaint on January 4, 2012. (Doc. 93.)  This amended complaint named 28 defendants, including: the former SCI-Superintendent Marirosa Lamas; SCI-Superintendent's Assistant Troy Edwards; Mailroom Supervisor Peterson; Business Manager Koleno; Librarian Kopshina; Eiswerth; and Corrections Officers Oden, Reid, Curham, Pinard, Rager, Wolford, Gair, Hummel, Keen, Foulds, Griner,

Campbell, Robenolt, Gridley, Blessing, Sisley, Craver, Miller, Redding, Nolte, Baker, and Barto. (Id.)

In her amended complaint Ball alleged, with differing degrees of coherence and clarity, that all of these various corrections officers and SCI-Muncy employees interfered with her mail over the span of a two year period from 2007 through April, 2009 by, *inter alia*, refusing to deliver her incoming mail to her and refusing to send her outgoing mail. (Id.) While cast by Ball as a lawsuit relating to interference with prisoner mail, the summary judgment motion now pending before the court reveals that in this case–like many of Ball's lawsuits[4]–there is a bizarrely excretory aspect to these claims since in a number of instances prison official have notified Ball that they have had to curtail her mail service briefly because of her penchant for smearing human waste on herself, her mail and her cell, events which have compelled staff to place Ball in medical observation cells, where mail service is restricted. (Doc. 123-1.)

---

[4]See e.g., Ball v. Hill, 1:09-CV-773, 2012 WL 4069748 (M.D. Pa. Aug. 9, 2012) report and recommendation adopted, 1:09-CV-00773, 2012 WL 4069737 (M.D. Pa. Sept. 17, 2012); Ball v. Famiglio, 1:11-CV-1834, 2012 WL 1886676 (M.D. Pa. Mar. 14, 2012) report and recommendation adopted, 1:11-CV-1834, 2012 WL 1886673 (M.D. Pa. May 23, 2012); Ball v. Sisley, 1:11-CV-877, 2011 WL 7940267 (M.D. Pa. Dec. 20, 2011) report and recommendation adopted, 1:11-CV-877, 2012 WL 1867276 (M.D. Pa. May 22, 2012).

Ball's amended complaint also alleged without any further supporting proof that she had exhausted her administrative remedies with respect to these claims, or had "obstructed to exhaust." (Id.) It is this issue of Ball's exhaustion of her administrative remedies that now comes to the fore in this case, since the defendants have moved for summary judgment on Ball's amended complaint on the grounds that she has failed to exhaust her administrative remedies with respect to these matters and claims. With respect to these exhaustion issues, the undisputed facts can be simply stated:

## A.    <u>Exhaustion of Grievances</u>

Dawn Ball is an inmate currently serving a state criminal sentence. By 2007 and 2008 Ball was fully familiar with Department of Corrections grievance procedures, which required inmates to grieve dispute with prison officials prior to proceeding to federal court. In fact, by the time of the events set forth in this case Ball had filed numerous prison grievances. Indeed, in other litigation involving Ball it has been shown that between January 2007 and December 2008 Ball pursued no less than 48 grievances to a final agency decision. <u>Ball v. SCI Muncy</u>, 1:08-CV-700, 2011 WL 6130600 (M.D. Pa. Nov. 21, 2011) <u>report and recommendation adopted sub nom.</u> <u>Ball v. Famiglio</u>, 1:08-CV-700, 2012 WL 1886655 (M.D. Pa. May 23, 2012). Thus, the undisputed facts show that Ball was a prolific, but procedurally erratic grievant,

who frequently filed grievances on a host of matters which displeased her at SCI Muncy.

As part of this grievance process, Ball was required to comply with certain procedures prescribed by the Department of Corrections.  Pursuant to 37 Pa. C.S. § 93.9, the Department of Corrections maintains a grievance system, which is conducted in accordance with Administrative Directive DC-ADM 804, entitled "Inmate Grievance System."  DC-ADM 804 establishes procedures for review of inmate grievances and consists of a three-step process.  See Booth v. Churner, 206 F.3d 289, 293, n. 2 (3d Cir. 2000).  This three-step process requires an inmate to file an initial grievance (Step One), an appeal to the Superintendent (Step Two), and a final appeal (Step Three) to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA").  To file an initial grievance, an inmate must submit to the Facility Grievance Coordinator a completed grievance form.  Id.  The inmate must identify the staff involved and must specifically state any claims he or she wishes to make concerning violations of Department directives, regulations, court orders, or other law and state the relief sought.  The grievance must be submitted within fifteen working days after the event in question.  If the Grievance is denied, the inmate may appeal within ten days to the Facility Manager.  If the inmate is dissatisfied with the decision

of the Facility Manager, she may then appeal to SOIGA within fifteen days of the Facility Manager's decision.

This grievance policy also recognizes that inmate may misuse and abuse these grievance procedures, and provides sanctions for prisoners who abuse this process in the form of grievance restrictions. However, "[a]ccording to the Pennsylvania Department of Corrections Grievance Policy DC-ADM 804 Part IV.L, an inmate on grievance restriction is restricted to filing no more than one grievance every 15 days. Thus, being on grievance restriction would not have prevented [an inmate] from exhausting h[er] remedies." Cummings v. Crumb, 347 F. App'x 725, 727 (3d Cir. 2009). Rather, it simply limits an inmate to one grievance per every 15 days. Id.

In this case, the Department of Corrections has prepared a declaration summarizing Ball's grievance history from 2007 through 2009 as it pertains to grievances which touch upon mail handling issues, the only issues remaining in this litigation. (Doc. 123-1.) That declaration has identified approximately 11 grievances by Ball which related at least tangentially to the matters set forth in her amended complaint. (Id.) With respect to these 11 grievances, it appears that in at least seven instances, Ball failed to complete her administrative exhaustion process because she either never appealed the grievance to a final review, never properly appealed to final review, or untimely appealed. (Id., "A," ¶¶ 15-18, 22-27, 32-39.)

Thus, only four arguably relevant mail processing grievances were properly, and completely, grieved by Ball prior to filing this lawsuit. The first of these grievances, Grievance No. 222423, was submitted by Ball on March 19, 2008. In this grievance Ball alleged that from March 11, 2008 until March 17, 2008, she did not receive mail and asserted that staff in the Restricted Housing Unit ("RHU") were tampering with her mail. (Id., ¶ 19.) In particular, Ball identified defendants Griner and Campbell as RHU, who received and withheld her mail. (Id.). Ball's amended complaint contains similar allegations, albeit allegations set in a slightly different time-frame. In her amended complaint, Ball alleges that from January 23, 2008, to February 19, 2008, from September 17, 2008, to September 18, 2008, and on October 23, 2008, defendants Campbell and Griner did not give plaintiff her mail and destroyed it. (Doc. 91, ¶ 9.) In contrast, in her grievance Ball alleged mishandling of mail by these same defendants for one week, from March 11, 2008, through March 17, 2008. (Id.)

On January 9, 2009, Ball filed a second grievance which is arguably pertinent to the mail processing claims set forth in her amended complaint, Grievance No. 257504. In this grievance, Ball alleged in very general terms that she found out on October 23, 2008, that R-Unit staff said she was not allowed mail. (Id., ¶ 28). This particular grievance submitted by Ball is notable in several respects. First, the

grievance fails to identify by name any prison staff member. Therefore, it is utterly impossible to link this exhausted grievance to any named defendant in this lawsuit. Furthermore, while Ball does not provide sufficient information in this grievance to allow staff to provide her meaningful relief, she used the grievance as a platform to threaten a lawsuit against staff, in order to "teach these staff the rules." (Id., Ex. A-6.) This grievance was denied, in a response which explained that Ball's mail would only be briefly held during those episodes when she acted out erratically and had to be housed under anti-suicide conditions, and the denial of this particular, and particularly generic, grievance was upheld at all levels of appeal, including Final Review. (Id., ¶ 29).

The third arguably pertinent and fully exhausted grievance filed by Ball, Grievance No. 258260, was filed on January 13, 2009. In this grievance Ball alleged that on January 12, 2009, defendant Blessing opened mail that was addressed as "legal" without the approval of the Superintendent and the Department Secretary and without telling her that her mail was to be opened, read, and/or monitored. (Doc. 123-1, ¶ 30.) This fully-exhausted grievance appears to concern matters that are similar to those alleged in paragraph 12 of Ball's amended complaint, which states that on January 13, 2009, Lt. Blessing "stole and obstructed 56 pieces of mail [she] sent for over a month." (Doc. 91, ¶12.)

Finally, in February of 2009, Ball filed a fourth grievance, Grievance No. 262985, which alleged that defendant Troy Edwards allegedly "stole" puzzles the plaintiff's mother had mailed to her. (Id., ¶ 36.) In appealing this grievance to the Superintendent, Ball then attempted to raise a different and unrelated issue, claiming that Edwards also allegedly refused to give her back a letter that her attorney sent to her. (Id., Ex.A-10.) Having failed to present this legal mail issue in the original grievance, Ball was informed she could not subsequently raise this issue mid-way through the grievance process. (Id.) Ball never filed a separate grievance relating to this particular claim that Edwards interfered with the delivery of an item of legal mail and this grievance was rejected at Final Review because it had been reviewed and addressed in a previous grievance. (Id.)

## 2. __Procedural History__

On the basis of these uncontested facts, the defendants have moved for summary judgment in their favor on August 14, 2012. (Doc. 120.) In this motion the defendants contend that all of Ball's claims are barred by her failure to properly and fully exhaust those claims through the prison grievance system. Ball has now responded to this motion, (Doc. 128.), and this matter is ripe for resolution.

For the reasons set forth below it is recommended that the summary judgment motion be granted in part and denied in part. Specifically, we recommend that the

defendants' summary judgment motion be granted as to the following defendants, since Ball has not exhausted administrative grievances relating to mail processing as to any of these defendants:   the former SCI-Superintendent Marirosa Lamas; Mailroom Supervisor Peterson; Business Manager Koleno; Librarian Kopshina; Ms. Eiswerth; and Corrections Officers Oden, Reid, Curham, Pinard, Rager, Wolford, Gair, Hummel, Keen, Foulds, Robenolt, Gridley, Sisley, Craver, Miller, Redding, Nolte, Baker, and Barto.

As to defendants Griner and Campbell, it is recommended that the motion for summary judgment be granted, in part, and that Ball's claims arising out of events which allegedly occurred from September 17, 2008, to September 18, 2008, and on October 23, 2008, be dismissed for failure to exhaust.   However, it is further recommended that summary judgment be denied with respect to Ball's mail processing claims which allegedly occurred from January 23, 2008, to February 19, 2008, provided that Ball amends her complaint within 20 days to ensure that the dates in the complaint conform with the dates alleged in her prison grievance, one week from March 11, 2008, through March 17, 2008.

As for defendant Blessing it is recommended that the defendants' summary judgment motion be denied, provided that Ball amends her complaint within 20 days to conform with the exhausted allegations in her prison grievance; namely, that on

January 12, 2009, defendant Blessing opened mail that was addressed as "legal" without the approval of the Superintendent and the Department Secretary and without telling her that her mail was to be opened, read, and/or monitored.

Finally, as to defendant Edwards it is recommended that the summary judgment motion be granted in part and denied in part as follows: The motion should be denied with respect to Ball's fully-grieved claim that defendant Troy Edwards allegedly "stole" puzzles the Plaintiff's mother had mailed to her, provided that Ball amends her complaint within 20 days to conform with the exhausted allegations in her prison grievance, but summary judgment should be granted with regard to Ball's unexhausted claim that Edwards allegedly refused to give her back a letter that her attorney sent to her.

## II.   Discussion

### A.   Rule 56–The Legal Standard

The defendants have moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and

for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co.</u>

<u>v. Dentsply Int'l, Inc.</u>, No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa.

Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby,</u>

<u>Inc.</u>, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if

there is a sufficient evidentiary basis that would allow a reasonable fact finder to

return a verdict for the non-moving party. <u>Id.</u> at 248-49.

The moving party has the initial burden of identifying evidence that it believes

shows an absence of a genuine issue of material fact. <u>Conoshenti v. Pub. Serv. Elec.</u>

<u>& Gas Co.</u>, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown

that there is an absence of evidence to support the nonmoving party's claims, "the

non-moving party must rebut the motion with facts in the record and cannot rest

solely on assertions made in the pleadings, legal memoranda, or oral argument."

<u>Berckeley Inv. Group. Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006); <u>accord</u>

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to

make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden at trial," summary judgment

is appropriate. <u>Celotex</u>, 477 U.S. at 322. Summary judgment is also appropriate if

the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223,

n.2 (3d Cir. 2000), citing  Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d

1267, 1275, n.17 (3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996).   Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage.  Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa.

Aug. 26, 2005).  Thus, a party may not rely upon inadmissible hearsay assertions to

avoid summary judgment.  Therefore, where a party simply presents inadmissible

hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is

appropriate.  See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL

2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104,

2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug

Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that:  "[o]ne cannot create an issue of fact merely

by . . . denying averments . . . without producing any supporting evidence of the

denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the

material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).

A party cannot evade these litigation responsibilities in this regard simply by citing the fact that she is a *pro se* litigant. These rules apply with equal force to all parties. <u>See</u> <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## B.    The Prison Litigation Reform Act's Exhaustion Requirement

The defendants first urge the Court to grant summary judgment on the plaintiff's claims because Ball failed to fully exhaust the administrative remedies available to her under Department of Corrections procedures. In this case Ball's alleged failure to timely pursue these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made by Ball grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature

23

interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

Furthermore, applying this procedural default component to the exhaustion requirement, Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), it has been held that:

> As for the failure to the identify named defendants on the grievance form, . . . to the extent the identity of a defendant was "a fact relevant to the claim," Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant

constituted a failure to properly exhaust his administrative remedies under the PLRA.

Williams v. Pennsylvania Dep't. of Corrections, 146 F. App'x 554, 557(3d Cir. 2005).[5] Thus, "it is clear, regardless of the purpose of the requirement, that Spruill requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." Hemingway v. Ellers, No. 07-1764, 2008 WL 3540526, *11 (M.D.Pa. Aug.12, 2008).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by

---

[5]While the Williams decision is not precedential, it is highly persuasive as a "paradigm of the legal analysis [this Court] should . . . follow." Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir. 1996). We find the reasoning in Williams compelling, and recommend that this reasoning be extended to the instant case.

showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F. App'x at 368. See also Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

Furthermore, it is entirely clear that the fact that Ball may have been under a grievance restriction pursuant to DC-ADM 804 on some occasions, does not, by itself, excuse her failure to grieve this matter prior to filing suit in federal court, since those Corrections policies plainly allow inmates to file a limited number of grievances. Indeed, the United States Court of Appeals for the Third Circuit has rejected this precise argument in Cummings v. Crumb, 347 F. App'x 725, 727 (3d Cir. 2009), stating in that case that:

> [The inmate] also argued that he was denied the grievance process because he was on grievance restriction. According to the Pennsylvania Department of Corrections Grievance Policy DC-ADM 804 Part IV.L, an inmate on grievance restriction is restricted to filing no more than one grievance every 15 days. *Thus, being on grievance restriction would not have prevented [an inmate] from exhausting his remedies.*

<u>Cummings v. Crumb</u>, 347 F. App'x 725, 727 (3d Cir. 2009)(emphasis added).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to her. <u>Davis v. Warman,</u> 49 F. App'x 365, 368 (3d Cir. 2002). Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. <u>Casey v. Smith</u>, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. <u>Oliver v. Moore</u>, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Thus, in this setting, the Prison Litigation Reform Act requires that an inmate fully exhaust her administrative remedies before proceeding into federal court, an

administrative exhaustion requirement which entails full compliance with state grievance procedures and timelines, as well as the basic requisite that the inmate identify those against whom she has a grievance during the administrative process before she may name these individuals as defendants in a federal lawsuit.

**C.**     **Ball Has Failed to Properly Exhaust Her Administrative Remedies With Respect to Many of The Claims Set Forth in Her Amended Complaint**

Judged against these guideposts, we find that the defendants are entitled to summary judgment in their favor on many of Ball's claims on the grounds that Ball has failed to satisfy the PLRA's administrative exhaustion requirement. In this case, with respect to many of the defendants and matters set forth in her complaint, it is entirely undisputed that Ball has never exhausted her administrative remedies. Ball cannot claim she was unaware of this exhaustion requirement since it is clear that Ball was fully familiar with Department of Corrections grievance procedures, having filed numerous grievances in the past, and Ball has previously had cases dismissed due to her failure to exhaust her administrative remedies.

Furthermore, we find that Ball has failed to carry her burden of proving "that there was some extraordinary reason [s]he was prevented from complying with the statutory mandate," with respect to the matters set forth in this amended complaint. Davis v. Warman, supra, 49 F. App'x at 368. Ball's bald assertion in her amended complaint that she was "obstructed" in filing grievances, standing alone, plainly does

not carry this burden of proof for at least two reasons. First, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).

More fundamentally, Ball's argument fails because it is clear that inmates on grievance restrictions are still entitled to file one grievance every fifteen days. Cummings v. Crumb, 347 F. App'x 725, 727 (3d Cir. 2009). In fact, Ball's ability to file such grievances is not simply a regulatory hypothetical; it has been shown that between January 2007 and December 2008 Ball pursued no less than 48 grievances to a final agency decision. See Ball v. SCI Muncy, 1:08-CV-700, 2011 WL 6130600 (M.D. Pa. Nov. 21, 2011) report and recommendation adopted sub nom. Ball v. Famiglio, 1:08-CV-700, 2012 WL 1886655 (M.D. Pa. May 23, 2012). This immutable fact demonstrates Ball's actual subjective knowledge concerning her

ability to pursue and exhaust grievances at the time of the events set forth in this complaint.

On these undisputed facts, there is simply no competent evidence to support a claim by Ball that she exhausted administrative grievances, or was "obstructed" from exhausting grievances, regarding mail handling with respect to the following 24 defendants: the former SCI-Superintendent Marirosa Lamas; Mailroom Supervisor Peterson; Business Manager Koleno; Librarian Kopshina; Ms. Eiswerth; and Corrections Officers Oden, Reid, Curham, Pinard, Rager, Wolford, Gair, Hummel, Keen, Foulds, Robenolt, Gridley, Sisley, Craver, Miller, Redding, Nolte, Baker, and Barto. Ball cannot save her claims against these defendants by citing to the fact that she filed a completely generic grievance in January of 2009 which alleged in very general terms that she found out on October 23, 2008, that R-Unit staff said she was not allowed mail. (Id., ¶ 28). This particular grievance does not satisfy Ball's obligations under the PLRA for one simple reason: The grievance failed to identify by name any prison staff member. In this regard, it is well-settled that: "As for the failure to the identify named defendants on the grievance form, . . . to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted

a failure to properly exhaust his administrative remedies under the PLRA." <u>Williams v. Pennsylvania Dep't. of Corrections</u>, 146 F. App'x 554, 557(3d Cir. 2005). Thus, Ball's complete failure to properly identify any of these 24 defendants in any fully exhausted grievance, now bars her from proceeding against these defendants in this lawsuit.

As for mail processing complaints relating to defendants Griner and Campbell, we find that Ball did fully, albeit inartfully, exhaust her grievances on one particular claim, which she may now pursue. Specifically, on March 19, 2008, Ball submitted Grievance No. 222423, in which she alleged that from March 11, 2008 until March 17, 2008, she did not receive mail and asserted that staff in the Restricted Housing Unit ("RHU") were tampering with her mail. (<u>Id.</u>, ¶ 19). In particular, Ball identified defendants Griner and Campbell as RHU, who received and withheld her mail. (<u>Id.</u>). Ball's amended complaint contains similar allegations, albeit allegations set in a slightly different time-frame. In her amended complaint, Ball alleged that from January 23, 2008, to February 19, 2008, from September 17, 2008, to September 18, 2008, and on October 23, 2008, defendants Campbell and Griner did not give Plaintiff her mail and destroyed it (Doc. 91, ¶ 9.). In contrast, in her grievance Ball alleged mishandling of mail by these same defendants for one week from March 11, 2008, through March 17, 2008. (<u>Id</u>.)

While we acknowledge this discrepancy between Ball's amended complaint and her grievance, we do not give it the wholly preclusive effect urged by the defendants. Instead, recognizing the longstanding legal principle that "a pleading may be amended to conform to the proof," Schultz v. Cally, 528 F.2d 470, 474 (3d Cir. 1975), Rule 15(b) F. R. Civ. Pro., we believe that the appropriate course would be to allow Ball to cure this minor discrepancy by permitting Ball to amend her complaint on this score, so that the complaint conforms with what the undisputed evidence shows to be an otherwise fully exhausted claim. Following this approach, we recommend that Ball be permitted to pursue, as administratively exhausted, her mail tampering claim against defendants Griner and Campbell that pre-dated her fully exhausted March 2008 grievance, provided she amends her complaint to ensure that the dates in the complaint conform with the dates alleged in her prison grievance, one week from March 11, 2008, through March 17, 2008. As for the allegations in Ball's amended complaint relating to conduct by defendants Griner and Campbell that allegedly occurred in September and October 2008, those claims should be dismissed since they plainly were not administratively exhausted by Ball's grievance which was filed in March 2008, six months *before* the events set forth in the amended complaint.

We recommend a similar course with respect to Ball's claims against defendant Blessing, which also reflect a discrepancy between the allegations in the plaintiff's fully exhausted grievance and those made in her amended complaint, albeit a

discrepancy which could be cured through an amendment of her pleadings to conform to the proof. The fully exhausted grievance filed by Ball with respect to defendant Blessing alleged that on January 12, 2009, defendant Blessing opened mail that was addressed as "legal" without the approval of the Superintendent and the Department Secretary and without telling her that her mail was to be opened, read, and/or monitored. (Doc. 123-1, ¶ 30.) In contrast, paragraph 12 of Ball's amended complaint, states that on January 13, 2009, Lt. Blessing "stole and obstructed 56 pieces of mail [she] sent for over a month." (Doc. 91, ¶12.) Rather than give this discrepancy between the alleged content of these two categories of mail a preclusive effect in this lawsuit, it is recommended that Ball be permitted to amend her claim as to defendant Blessing to conform to the proof regarding the claim she has fully exhausted with respect to this defendant, and permit Ball to amend her complaint to allege that on January 12, 2009, defendant Blessing opened mail that was addressed as "legal" without the approval of the Superintendent and the Department Secretary and without telling her that her mail was to be opened, read, and/or monitored.

Finally, adopting this same analytical approach to Ball's claims against defendant Edwards, we find that there is a discrepancy between her exhausted grievance as to this defendant and her amended complaint, but conclude that Ball should be permitted as to this claim to amend her pleadings to conform to the proof as it relates to administrative exhaustion of these claims. See Schultz v. Cally, 528

F.2d 470, 474 (3d Cir. 1975). Thus, Ball should be permitted to amend her complaint to state the claim that she administratively exhausted; namely, that defendant Troy Edwards allegedly "stole" puzzles the plaintiff's mother had mailed to her. Ball should not, however, be permitted to pursue the unexhausted claim she alleged in this amended complaint, which described a different and unrelated issue that Edwards allegedly refused to give Ball back a letter that her attorney sent to her.[6]

While this recommended course would resolve the defendants' objections based solely upon Ball's failure to exhaust her administrative remedies, the remaining

---

[6] In the event that Ball declines to file amended pleadings which conform with the proof, it is well within the court's discretion to dismiss the complaint with prejudice given the plaintiff's refusal to comply with court directives. Indeed, this precise course was endorsed by the United States Court of Appeals for the Third Circuit in Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007). In Pruden, the appellate court addressed how district judges should exercise discretion when a *pro se* plaintiff ignores instructions to amend a complaint. In terms that are equally applicable here the court observed that: "The District Court dismissed the complaint without prejudice and allowed [the *pro se* plaintiff] twenty days in which to file an amended complaint. [The *pro se* plaintiff] failed to do so. Because [the *pro se* plaintiff] decided not to amend his complaint in accordance with the Federal Rules of Civil Procedure, we conclude that the District Court did not abuse its discretion when it dismissed [the *pro se* plaintiff's] complaint with prejudice. See In re Westinghouse Securities Litigation, 90 F.3d 696, 704 (3d Cir.1996). The District Court expressly warned [the *pro se* plaintiff] that the failure to amend his complaint would result in dismissal of the action with prejudice. '[I]t is difficult to conceive of what other course the court could have followed.' Id. (quoting Spain v. Gallegos, 26 F.3d 439, 455 (3d Cir.1994))." Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007).

claims in this litigation still need to be assessed on their legal merits. Towards that end, we note that we have previously explained to Ball the legal benchmarks:

> [W]hich satisfy the requirements of a First Amendment claim relating to access to mail in this correctional setting. With respect to such claims as they pertain to incoming inmate mail, Ball should understand that prison regulations governing receipt of mail are valid if they are:
>
>> reasonably related to legitimate penological interests. To reach this determination, [the United States Supreme Court in] Turner [v. Safley] prescribes a four-part test. We must consider: (1) whether there is a valid, rational connection between the prison regulation and a legitimate governmental interest; (2) whether alternative means of exercising the right in question remain open to inmates; (3) the impact accommodation of the asserted prisoner right will have on the prison generally; and (4) whether there is an absence of ready alternatives. *Turner,* 482 U.S. at 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64.
>>
>> Nasir v. Morgan, 350 F.3d 366, 371–72 (3d Cir.2003).
>
> As for outgoing inmate mail: "The applicable test from [Procunier v.] Martinez has two elements: (1) that the regulation must further an important or substantial government interest unrelated to the suppression of expression; and (2) that the regulation be no greater than necessary for the protection of that interest. Martinez, 416 U.S. at 413, 94 S.Ct. 1800, 40 L.Ed.2d 224." Nasir v. Morgan, 350 F.3d 366, 374 (3d Cir.2003). Thus, Ball . . . [be] mindful of the fact that the courts have previously upheld the constitutionality of many Department of Corrections policies governing inmate mail. See, e.g., Robinson v. Department of Corrections, 327 F. App'x 321 (3d Cir.2009); Nasir v. Morgan, 350 F.3d 366, 371–72 (3d Cir.2003).

Ball v. Powley, 1:11-CV-1832, 2012 WL 2504932 (M.D. Pa. June 5, 2012) report and recommendation adopted, 1:11-CV-1832, 2012 WL 2504167 (M.D. Pa. June 28, 2012)

These are exacting legal standards, and we believe as a matter of fairness to all parties that they should be promptly applied to assess the merits of Ball's remaining claims in this longstanding litigation. Therefore, in order to address the merits of these remaining constitutional claims in a timely manner, it is further recommended that the defendants be directed to file any appropriate dispositive motions addressing the merits of these remaining claims within 30 days of the adoption of this report and recommendation.

### D. Ball's Claims Against The Superintendent, Defendant Lamas, Fail as a Matter of Law

Finally, entirely aside from Ball's failure to exhaust many of these claims, we find that Ball's claims against defendant Marirosa Lamas, the former superintendent at SCI Muncy clearly fail as a matter of law. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

Thus, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion

School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006)(emphasis added).

Here, Ball does not allege that defendant Lamas directed the conduct complained of by the plaintiff, or had knowledge of that conduct and acquiesced in it. Rather, in the first instance, Ball seems to simply allege that Superintendent Lamas is legally responsible for the overall operation of the institution. Beyond this bare assertion of supervisory liability, the only other, albeit unarticulated, claim made against this defendant is that the superintendent failed to act favorably upon Ball's grievances. To the extent that Ball premises the liability of defendant Lamas upon the assertion that she was legally responsible for the overall operation of the institution, without setting forth any further factual basis for a claim against him in the body of this pleading, this cursory style of pleading is plainly inadequate to state

a claim against a prison supervisor and compels dismissal of this defendant. <u>Hudson v. City of McKeesport</u>, 241 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Nor can an inmate, like Ball, sustain a constitutional claim against a prison supervisor based solely upon assertions that this official failed to adequately investigate or respond to her past grievances. Inmates do not have a constitutional right to a prison grievance system. <u>Speight v. Sims</u>, 283 F. App'x 880 (3d Cir. 2008) (citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. <u>See also</u> <u>Alexander v. Gennarini</u>, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). <u>See also</u> <u>Cole v. Sobina</u>, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, in this case fairly construed, Ball's claims against defendant Lamas consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with Lamas' processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, defendant Lamas is entitled to be dismissed from this case.

### III.  **Recommendation**

Accordingly, for the forgoing reasons, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 120.), be GRANTED, in part, and DENIED, in part, as follows:

1.  The defendants' summary judgment motion should be granted as to the following defendants, since Ball has not exhausted administrative grievances relating to mail processing as to any of these defendants: the former SCI-Superintendent Marirosa Lamas; Mailroom Supervisor Peterson; Business Manager Koleno; Librarian Kopshina; Ms. Eiswerth; and Corrections Officers Oden, Reid, Curham, Pinard, Rager, Wolford, Gair, Hummel, Keen, Foulds, Robenolt, Gridley, Sisley, Craver, Miller, Redding, Nolte, Baker, and Barto.

2.  As to defendants Griner and Campbell, it is recommended that the motion for summary judgment be granted in part and that Ball's claims arising out of events which allegedly occurred from September 17, 2008, to September 18, 2008, and on October 23, 2008, be dismissed for failure to exhaust.  However, it is further recommended that summary judgment be denied with respect to Ball's mail processing claims which allegedly occurred from January 23, 2008, to February 19, 2008, provided that Ball amends her complaint within 20 days to ensure that

the dates in the complaint conform with the dates alleged in her prison grievance, one week from March 11, 2008, through March 17, 2008.

3.   As for defendant Blessing it is recommended that the defendants' summary judgment motion be denied, provided that Ball amends her complaint within 20 days to conform with the exhausted allegations in her prison grievance; namely, that on January 12, 2009, defendant Blessing opened mail that was addressed as "legal" without the approval of the Superintendent and the Department Secretary and without telling her that her mail was to be opened, read, and/or monitored.

4.   As to defendant Edwards it is recommended that the summary judgment motion be granted in part and denied in part as follows:    The motion should be denied with respect to Ball's fully-grieved claim that defendant Troy Edwards allegedly "stole" puzzles the Plaintiff's mother had mailed to her, provided that Ball amends her complaint within 20 days to conform with the exhausted allegations in her prison grievance, but summary judgment should be granted with regard to Ball's unexhausted claim that  Edwards allegedly refused to give her back a letter that her attorney sent to her.

5.   In order to address the merits of these remaining constitutional claims in a timely manner, it is further recommended that the defendants be

directed to file any appropriate dispositive motions addressing the merits

of these remaining claims within 30 days of the adoption of this report

and recommendation.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of December 2012.

 *S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge